NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0049n.06
Filed: January 15, 2008

No. 06-4554

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| KENNETH MICHAEL SAGRAVES ) | |
| ) | |
| **Plaintiff-Appellant,** ) | |
| v. ) | |
| ) | ON APPEAL FROM THE |
| LAB ONE, INC. ) | UNITED STATES DISTRICT |
| ) | COURT FOR THE SOUTHERN |
| **Defendant -Appellee.** ) | DISTRICT OF OHIO, EASTERN |
| ) | DIVISION |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

BEFORE:    KEITH and CLAY, Circuit Judges; and STEEH, District Judge[*]

**DAMON J. KEITH, Circuit Judge.**  Appellant Kenneth Michael Sagraves appeals from the October 30, 2006 summary judgment ruling of the United States District Court for the Southern District of Ohio denying his negligence claim against drug testing company Lab One. For the reasons stated below, we **AFFIRM**.

### I. BACKGROUND

Appellant Kenneth Michael Sagraves ("Plaintiff") was employed as a maintenance worker at United Church Homes, Inc. ("United") between November 2001 and May 2003.  During

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Sagraves's tenure at United, the company implemented a random drug testing policy. United contracted with Nationwide Drug Testing Services, Inc. ("Nationwide") to provide occupational drug testing services. Nationwide contracted with Defendant Lab One to provide laboratory drug testing services for its clients.

On April 28, 2003, Plaintiff submitted to a random drug test. The oral test was conducted by his supervisor and another co-worker and was witnessed by a supervisor from United's corporate office. The supervisor conducting the test used a Lab One drug testing kit containing a test tube vial with blue preservative liquid, a plastic collection wand with a sponge-like swab at the end, and various sealing and shipping labels.

The supervisor conducted the test by inserting the wand into Plaintiff's mouth, where he held the swab between his check and gum for approximately two to five minutes. Per the instructions, the supervisor then broke the wand in half in order to fit it inside the test tube vial containing the blue preservative liquid, sealed the vial, and enclosed it in a shipping package to send to Lab One. Plaintiff alleges that during the test, more than half of the preservative fluid spilled out of the vial.

Testing of Plaintiff's specimen revealed the presence of benzoylecgonine, a cocaine metabolite, above designated cut-off levels. Lab One reported the test results to United on April 30, 2003. Plaintiff then requested a retest of his specimen at an independent laboratory. The second test, conducted by Clinical Reference Laboratory, Inc. (CRL"), confirmed Lab One's findings.

On May 15, 2003, Plaintiff signed a "Last Chance" agreement with United, stipulating that his continued employment with United would be conditioned on his completion of a substance abuse assistance program, and stating that failure to complete the program would result in his termination. United placed Plaintiff on leave pending his completion of the program. As a part of the drug

2

counseling program, Plaintiff submitted a urine sample that tested negative for cocaine. Sagraves failed to complete the program and was terminated on May 28, 2003.

## II. DISCUSSION

### A. Grant of summary judgment on Plaintiff's negligence claim.

This Court reviews de novo the district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c). A genuine issue of material fact exists when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. *Id*. "Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Beecham v. Henderson County*, 422 F.3d 372, 374 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In order to establish a claim of negligence and avoid summary judgment, Plaintiff must establish a genuine issue of material fact as to each element of his claims. He must therefore show that (1) Lab One owed a duty of care to him; (2) Lab One breached this duty; and (3) that the breach of duty was the proximate cause of the injury suffered. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 693 N.E.2d 271, 27 (Ohio 1998)). Here, Plaintiff is unable to show that he was owed a duty by Lab One, that Lab One breached this duty, or that the breach of the duty was the proximate cause of his

3

termination.

*1. Duty of Care*

Although there is no case law in Ohio concerning the duty owed to employees by drug testing companies, in negligence cases, Ohio courts have generally applied the economic-loss rule, "denying recovery in negligence for purely economic loss." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45, 537 N.E.2d 624, 630-31 (Ohio 1989). In *Floor Craft Floor Covering v. Parma Cmty Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 3, 560 N.E.2d 206, 208 (Ohio 1990), the Ohio Supreme Court found that "there is no . . . duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things."

Plaintiff incorrectly argues that the application of this rule would result in "the twisted logic" by barring "the recovery of damages to a motor vehicle in a traffic accident when there is only property damage" and "recovery against a tortfeasor for fire damage to a building." (App. Reply Br. at 8). The economic-loss rule only bars recovery in negligence when loss does not arise from any physical damage. Both examples the Plaintiff cites involve physical damage – to a motorcycle in one and to a building in the other. Here, there is no allegation by Sagraves of any physical damage by Lab One. Plaintiff therefore fails to satisfy the requisite duty of care necessary to establish his negligence claim.

*2. Breach of Duty*

Even if Plaintiff were to establish that a duty of care existed, he is unable to demonstrate that Lab One violated such a duty. Because understanding the standard of care for oral fluid drug testing requires more than common knowledge and experience, under Ohio law, a plaintiff must establish

4

the applicable standard of care through expert testimony. *Simon v. Drake Construction Co.*, 87 Ohio App.3d 23, 26, 621 N.E.2d 837, 839 (Ohio Ct. App. 1993) ("Expert testimony is required to establish the standard of care, unless the lack of skill or care of the professional is so apparent as to be within the comprehension of a layperson and requires only common knowledge and experience to understand it.").

At trial, Plaintiff failed to call a witness to establish the applicable standard of care. The only such evidence was proffered by Lab One's expert, Dr. Cone, who testified that Lab One acted in accordance with the applicable standard of care. Moreover, Plaintiff's specimen was retested by CRL, whose examination also yielded a positive result for cocaine metabolite.

Without establishing a standard of care, Plaintiff asserts that Lab One breached its duty of care for a number of reasons: (1) the test conductor spilled half the preservative when placing the plastic testing device in the vial; (2) Lab One's machinery was not functioning properly when the test was conducted; (3) a urine test conducted while Plaintiff was in drug treatment yielded a negative result; (4) a hair test conducted by Quest seventy-seven days after the Lab One test yielded a negative result; (5) a Delta Airlines employee successfully brought suit against Lab One for a false urine test in another jurisdiction; (6) a federal court has found that GC/MS/MS testing (also used by Lab One) has been deemed insufficient by the U.S. Army in military proceedings; and (7) the Plaintiff signed an affidavit stating that he had never used illegal drugs.

First, there is no evidence in the record to suggest the spillage invalidated the test. Expert Lance Presley testified that the test Lab One conducted requires approximately 300 microliters of the blue liquid to conduct the test. When asked whether spillage of "any of the liquid" contained in the vile would "affect validity of the test," Presley responded, "Would not affect the validity, no."

5

Plaintiff alleges that over half of the 700 microliters spilled during testing, but he presented no evidence that Lab One lacked the minimum level needed to conduct the test, or that testing on a smaller amount would invalidate the test. Furthermore, the liquid in the vial was not spilled by Lab One, but by a United employee supervising the test. Plaintiff has not presented evidence indicating that Lab One failed to follow the applicable standard of care by testing the specimen that they received.

Second, Plaintiff alleges that Lab One's machinery was not functioning properly at the time of the test. Plaintiff points to a "2" under a column entitled "fail" in one row of a multi-row Lab One GC/MS/MS Autotune Review Checklist. Dr. Presley testified that the "2" was a stray mark, and Plaintiff has not provided any evidence indicating that the mark or even any mechanical significance associated with the mark affected the validity of the test.

Third, Plaintiff suggests that the negative urine test demonstrates that Lab One's oral test was incorrect. There is no evidence, however, to suggest that the urine test, which was conducted while Plaintiff was in drug treatment, invalidates Lab One's earlier test. The urine test does not demonstrate that Lab One failed to adhere to the proper standard of care when conducting its test.

Fourth, Plaintiff argues that the negative hair test also demonstrates that Lab One breached its duty of care. There is no evidence to demonstrate, however, that the hair test, that was administered seventy-seven days after Lab One's test, invalidates Lab One's oral test. Both Plaintiff's and Defendant's expert witnesses testified that the results of the hair test are not inconsistent with the Lab One Test. The hair test demonstrated only that cocaine was not present in Plaintiff's system above a certain cut-off level. When Plaintiff's hair test expert, Dr. Bourland, was asked whether after "reviewing the hair test" there was any evidence that "Lab One did anything

6

incorrectly in the oral fluids specimen that was collected seventy-seven days prior," he responded, "No." When asked whether the two tests had "inconsistent results," he responded, "No. Not at all."

Plaintiff further argues that his own expert witness is now biased because several months after his deposition, Quest, his laboratory, purchased Defendant's expert laboratory. Despite this acquisition, there is nothing in the record that indicates that Dr. Bourland testified untruthfully or that his hair test demonstrates that Lab One was negligent in conducting its test.

Fifth, Plaintiff cites a lawsuit by a Delta Airlines employee against Lab One for a false urine test. *Ishikawa v. Delta Airlines*, Inc., 343 F.3d 1129 (9th Cir. 2003). The evidence in that case, however, does not establish that Lab One breached a duty of care in administering an oral test to the Plaintiff.

Sixth, Plaintiff alleges that the United States military has deemed part of Lab One's testing procedure as unreliable. The U.S. Army, however, did not find that using the GC/MS/MS test was negligent or violated a standard of care. Rather, it deemed the testing insufficient for use in military proceedings to demonstrate guilt beyond a reasonable doubt. *United States v. Campbell*, 50 M.J. 154 (C.A.A.F. 1999).

Finally, the Plaintiff cites his signed affidavit, stating that he has never used cocaine. This affidavit, however, is merely an assertion, not competent evidence demonstrating that Lab One violated a duty of care.

None of this evidence established that Lab One breached its duty of care. Although summary judgment evidence must be viewed in the light most favorable to the plaintiff in evaluating a summary judgment motion, the plaintiff "may not rest upon [] mere allegations . . . but . . . must set forth specific facts showing there is a legitimate issue for trial." Because Plaintiff has failed to set

7

forth such facts specifying a violation of the applicable standard of care, he has failed to establish the requisite breach of duty element of his negligence claim.

*3. Proximate Cause*

Plaintiff has not addressed the district court's determination that Lab One's test was not the proximate cause of his termination. Plaintiff was terminated only after (1) the positive test was confirmed independently by another laboratory, CRL, and (2) the Plaintiff failed to finish the drug treatment program he agreed to complete in his "Last Chance" agreement with United. Both of these factors demonstrate that Lab One was not the proximate cause of Plaintiff's termination.

**B. Summary judgment on Plaintiff's third party contract claim**.

Plaintiff argues that the district court improperly found that he was not a third party beneficiary to any contract and erred when it granted summary judgment on his third-party beneficiary claim against Lab One.

Under Ohio law, a third party beneficiary is: (1) a creditor beneficiary; (2) a donee beneficiary; or (3) an incidental beneficiary. *Visintine & Co. v. N.Y., Chi. & St. Louis RR. Co*. 169 Ohio St. 505, 507, 160 N.E.2d 311, 313 (Ohio 1959). The Ohio Supreme Court has also held that only intended third-party beneficiaries may assert rights to contracts to which they are not party. *TRINOVA Corp. v. Pilkington Bros.*, P.L.C., 70 Ohio St.3d 271, 277-78, 638 N.E.2d. 572, 577 (Ohio 1994). Incidental beneficiaries are not permitted to assert claims. *Id*. Third-parties that are not intended beneficiaries are merely incidental beneficiaries

In this case, no contract exists between United and Lab One. The only contracts here are between United and Nationwide and Nationwide and Lab One. Even if Plaintiff is able to show that he is a third-party beneficiary to the contract between Nationwide and Lab One and that he relied on

8

that contract, he is not an intended beneficiary. When applying Ohio law, this Circuit applies an "intent to benefit" test to determine whether a third-party is an intended beneficiary. *Norfolk & Western Co. v. Greyhound Lines, Inc.*, 641 F.2d 1201, 1208 (6th Cir. 1980). Nothing in the record indicates that the laboratory service agreement between Nationwide and Lab One was intended to benefit Plaintiff.

**C. Award of attorney's fees to Lab One**.

This Court reviews a district court's decision to award attorney's fees for abuse of discretion. *Hadix v. Johnson*, 65 F.3d 532, 534 (6th. Cir 1995). Plaintiff argues that the district court abused its discretion by awarding attorney's fees incurred by Defendant in filing a motion to compel Plaintiff to disclose all witnesses and accompanying documents.

On February 7, 2004, Lab One requested that Plaintiff produce all witnesses and documents he planned to rely on at trial. In the original state court action, the deadline for Plaintiff Sagraves to produce these materials was June 29, 2004, but after the case was removed to federal court, the deadline was extended to March 23, 2005. On April 9, 2005, after the deadline had passed, Plaintiff informed Lab One that he "currently has no documents in his possession which would respond to the request of said Defendant." (Pl.'s Resp. to Req. to Produce Docs.)

On July 30, 2004, in response to Lab One's motion for summary judgment, Plaintiff identified his expert witness, Dr. James Bourland, and Dr. Bourland's affidavit regarding the results of the hair test. On August 9, Lab One faxed Plaintiff's counsel, requesting the production of all documents it had previously requested, including documents mentioned in Dr. Bourland's affidavit. The letter informed Plaintiff's counsel that if Lab One did not receive the documents by the end of that business day, Lab One would inform the court.

9

Plaintiff's counsel responded by informing Defendant that he had been on vacation for ten days and would send all of the documents and reports when they received them. Defendant filed its motion to compel the next day.

Magistrate Judge Mark R. Abel of the district court ordered Plaintiff to make the necessary Rule 26(2) disclosures by producing the requested documents within ten days and to produce Dr. Bourland for a deposition within thirty days. The court also ordered Plaintiff to pay Defendant the cost of filing the motion.

The district court does not appear to have abused its discretion in awarding attorney's fees for the costs of the motion to compel. Plaintiff had missed the discovery deadline for disclosing his expert witness and failed to produce all relevant documents at the time the disclosure was eventually made. The court allowed the hair test and the expert testimony to be submitted, even though the deadline had passed.

After Plaintiff appealed Magistrate Judge Abel's decision to award attorney's fees, Judge Watson reviewed the itemized fees and found them reasonable. In considering whether the Plaintiff had the ability to pay, he held that the Plaintiff did not submit "sufficient documentation" demonstrating that his financial need was tenuous. *Wilson v. Upjohn Co.*, 808 F.Supp. 1321, 1325 (S.D. Ohio 1992). *See also Legair v. Circuit City Stores, Inc.*, 213 Fed. Appx. 436, 440 (6th Cir. 2007). Instead, Plaintiff relied on his counsel's "personal knowledge" of his financial situation.

Because Plaintiff missed the discovery deadline for disclosing his expert and documents related to the expert report, and because Plaintiff failed to properly document his financial status, the district court did not abuse its discretion in awarding attorney's fees.

**D. Failure to extend discovery and allowing Plaintiff to depose Defendant's expert witness**

**after discovery period.**

This Court reviews discovery orders for abuse of discretion, *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th. Cir 1997), reversing only when the decision results in substantial prejudice. *Scales v. J.C. Bradford*, 925 F.2d 901, 906 (6th. Cir 1991).

Plaintiff argues that the district court abused its discretion by refusing to extend the discovery deadline while Plaintiff sought to compel the deposition of Defendant's expert witness at a cost of less than $350 per hour. Review of the record below does not reveal any abuse of discretion of the trial court.

On February 2, 2005, Lab One offered its expert witness, Dr. Cone, for deposition to the Plaintiff prior to the March 4, 2005, discovery deadline. On February 24, 2005, Plaintiff filed a motion to compel production of Dr. Cone at no charge, or at a cost less than his rate of $350, and to extend the discovery deadline until August 1, 2005.

Magistrate Judge Abel denied the request for a rate reduction, finding that neither side presented evidence of customary expert rates, that Plaintiff could reduce the expense by taking the deposition by phone, and that Plaintiff failed to provide evidence that he was unable to pay the fee. Judge Abel also denied the extension, noting that discovery deadlines had already been extended many times in the case. He gave Plaintiff an additional eleven days from the date of his ruling, however, to schedule the deposition.

Plaintiff missed this deadline and instead challenged the order on June 6, 2005. He failed, however, to request a stay of Judge Abel's order. The district court upheld Judge Abel's decision, citing Plaintiff's failure to present evidence regarding customary expert costs and the multiple prior discovery extensions in the case. Relying on Local Rule 72.3 of the Southern District of Ohio, the

11

district court also found that Plaintiff's failure to request a stay of the order while his appeal was pending caused the discovery deadline to remain in effect. The Court therefore refused to extend the discovery deadline and allow deposition of Dr. Cone.

As the review of the record demonstrates, the district court did not abuse its discretion in refusing to extend the deadline or order a reduction in the cost of deposing Dr. Cone. Plaintiff failed to present evidence of customary expert costs, only noting that the cost of his own expert was $150 per hour. As the district court found, however, Plaintiff's expert was much less experienced and was expert only in the area of hair testing. Plaintiff also failed to present evidence of his inability to pay. As the record shows, because the deadline had been extended on multiple other occasions and Plaintiff failed to request a stay of Judge Abel's order while appealing, the discovery period lapsed and the trial court did not abuse its discretion by failing to extend the deadline.

Finally, Plaintiff was unable to meet any of the elements of his negligence claim or overcome the significant legal obstacles preventing his third party contract claims, and there is no evidence in the record demonstrating that deposing Dr. Cone would have cured these deficiencies in Plaintiff's case. The failure to depose Dr. Cone therefore did not result in substantial prejudice to Plaintiff.

For the foregoing reasons, we **AFFIRM** the district court's judgment.